**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Karla Gomez-Silva,<br><br>          Plaintiff,<br><br>vs.<br><br>Jackson National Life Insurance Company, a foreign corporation,<br><br>          Defendants. | No. CV09-2120 PHX DGC<br><br><br><br>**ORDER** |

**I.   Plaintiff's Motion for Summary Judgment.**

Plaintiff moved for summary judgment on January 3, 2011, as part of its response to Defendant Jackson National Life Insurance Company's motion for summary judgment. Doc. 53. The case management order established October 22, 2010 as the dispositive motion deadline (Doc. 22), and the Court later extended the deadline by 60 days (Doc. 41). Jackson National moves to strike Plaintiff's motion as untimely (Doc. 57), and also moves for summary disposition of the motion under Local Rule 7.2(i) (Doc. 62). Plaintiff has not responded to either motion. The Court finds that Plaintiff's motion for summary judgment is untimely because it was filed beyond the dispositive motion deadline and Plaintiff has not shown good cause for extending the deadline. Fed. R. Civ. P. 16(b)(4). Accordingly, Plaintiff's motion will be stricken. LRCiv. 7.2(m)(1).

**II.   Jackson National's Motion for Summary Judgment.**

Jackson National moves for summary judgment on the ground that California law governs the life insurance contract and, under that law, Jackson National is entitled to rescind

1  the contract. Doc. 48. Plaintiff responds that Arizona law controls the contract and, under
2  Arizona law, Jackson National is not entitled to rescind. Doc. 51. Jackson National's reply
3  does not address the argument that Arizona law would preclude rescission. Doc. 59. The
4  dispositive issue before the Court, therefore, is whether California law applies to the
5  insurance contract. The motion has been fully briefed (Docs. 48, 51, 59) and the parties have
6  not requested oral argument. For the reasons stated below, the Court will deny the motion
7  for summary judgment.

8       **A.**    **Legal Standards.**

9       When a conflict of law exists "in a diversity case, the district court must apply the
10 choice-of-law rules of the state in which it sits." *Abogados v. AT&T, Inc.*, 223 F.3d 932, 934
11 (9th Cir. 2000) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941)); *see also*
12 *Jorgensen v. Cassiday*, 320 F.3d 906, 913 (9th Cir. 2003). "Arizona courts apply the
13 Restatement [(Second) of Conflict of Laws ('Restatement')] to determine the applicable law
14 in a contract action." *Swanson v. Image Bank, Inc.*, 77 P.3d 439, 441 (Ariz. 2003) (citing
15 *Cardon v. Cotton Lane Holdings, Inc.*, 841 P.2d 198, 202 (Ariz. 1992)). The parties agree
16 that the Restatement applies in this case. Docs. 48, 51.

17      The parties focus most of their attention on § 187 of the Restatement, but the Court
18 concludes that another provision controls the choice-of-law issue in this case. Section 192
19 states that rights created by "a life insurance contract" are determined, "in the absence of an
20 effective choice of law by the insured *in his application*, by the local law of the state where
21 the insured was domiciled at the time the policy was applied for, unless, with respect to the
22 particular issue, some other state has a more significant relationship under the principles
23 stated in § 6 to the transaction and the parties." Restatement § 192 (emphasis added). This
24 section clearly applies to the issue presented in this case of "whether a false statement made
25 by the insured to the insurance company bars recovery upon the policy." *Id.* at cmt. a.
26 Because § 192 is more specific to life insurance contracts and to the precise issue in this
27 lawsuit, § 187 does not control. *See Giezl v. Town of Gilbert*, 529 P.2d 255, 258 (Ariz. App.
28 1974) (noting that a specific statute controls over a general statute).

Applying § 192, the Court must decide three issues: (1) Did the Decedent choose a particular state's law in his application? (2) If not, where was Decedent domiciled when he applied for the policy? (3) Does some other state have a more significant relationship than the domicile state under the factors addressed in § 6 of the Restatement?

**B.     Discussion.**

It is undisputed that Decedent purchased a $1,000,000 Jackson National life insurance policy, the policy called for payment of $300,000 to each of Decedent's two sons (represented by Plaintiff), Decedent died in an automobile accident in January of 2008, Jackson National rescinded the policy on account of an allegedly material misstatement by Decedent on the application, the misstatement – even if material – was not related to Decedent's death, and Jackson National returned the premiums paid to date but did not pay the sons' claim. Docs. 49, 52. With these basic facts in mind, the Court will address the three issues required by § 192.

**1.     Did Decedent make a choice of law in his application?**

Jackson National has provided no evidence that Decedent chose California law, or any other state's law, in his application. Jackson National argues strenuously that the insurance policy chose California law, but such a choice is not controlling under § 192, which asks only if "the insured" made an effective choice of law "in his application." Restatement § 192.[1]

**2.     Decedent's Domicile.**

"In order to establish domicile in Arizona a party must show '(1) physical presence and (2) an intent to abandon the former domicile and remain here for an indefinite period of time.'" *Lake v. Bonham*, 716 P.2d 56, 58 (Ariz. App. 1986) (quoting *DeWitt v. McFarland*, 537 P.2d 20, 21 (Ariz. 1975)). Each case should be "decided on the basis of its own peculiar facts, using as indicia the habits of the person, his business and domestic relations,

---

[1] The Court has found no Arizona case applying a choice-of-law provision in an insurance policy, as opposed to an insurance application, and Jackson National has cited none. As Arizona generally follows the Restatement, the Court will apply the application-choice requirement of § 192.

- 3 -

1  declarations, exercise of political rights, community activities, payment of taxes, ownership
2  of property and other pertinent objective facts ordinarily arising out of the existence of the
3  requisite intent." *Jizmejian v. Jizmejian*, 492 P.2d 1208, 1212 (Ariz. App. 1972). "Domicile
4  is presumed to follow residence, and, as actual residence is merely one circumstance, the
5  presumption raised thereby is not conclusive, but is rebuttable and the burden of proof to
6  rebut this presumption is on the person contending to the contrary." *Id.* at 1211. The
7  evidentiary standard is a preponderance of the evidence. *Id.* at 1212.

8      It is undisputed that Decedent had resided in California at some time prior to an
9  application for insurance being discussed by Decedent and Jackson National's agent.
10 Plaintiff asserts, however, that Decedent was a resident of Arizona at the time of application,
11 had been living in Arizona full time for more than one year, had an Arizona driver license,
12 and listed an Arizona address on his life insurance application. Doc. 51 at 3; Doc. 52 at 6.
13 Jackson National argues that it asked Plaintiff to admit Decedent resided in California on the
14 day the application was signed (Doc. 49 at 6:1-2), that Plaintiff failed to respond within 30
15 days of service, and that Plaintiff thereby admitted Decedent resided in California on that day
16 (Doc. 48 at 7 n.30). Jackson National also asserts, however, that Decedent "traveled to
17 California to obtain insurance" (Doc. 48 at 7) and does not dispute that Decedent had an
18 Arizona driver license and listed an Arizona address on his application (Doc. 48). Jackson
19 National's Exhibit 4 shows that Decedent listed an Arizona address in the application and
20 held a current Arizona driver's license. Doc. 49-3 at 19-21. The medical examination
21 related to the insurance application lists a Tucson, Arizona address for the medical examiner
22 (Doc. 49-3 at 24), and Jackson National does not deny that the medical exam took place in
23 Arizona. Moreover, Decedent's girlfriend testified that she lived in Yuma, Arizona with
24 Decedent from November 2005 until his death in January 2008. Doc. 52-1 at 41. Jackson
25 National asserts in a separate filing that Decedent and his girlfriend "were making a
26 transition to Arizona." Doc. 56 at 3.

27     Because of Plaintiff's failure to timely respond to the request for admission and
28 because Plaintiff's motion to withdraw the admission was not made until more than 30 days

- 4 -

after Jackson National filed its motion for summary judgment, the Court will assume for purposes of this motion that Decedent resided in California on November 20, 2006 and January 16, 2007. Fed. R. Civ. P. 36(b). The Court will not assume Decedent resided in California immediately before or after these dates, however, because the admission request was narrowly phrased as to two specific days, not time periods (Doc. 49-9 at 6:8-13).

As noted above, Arizona's presumption that domicile follows residence may be rebutted by a preponderance of the evidence. *Jizmejian*, 492 P.2d at 1211. The Court finds that Plaintiff has rebutted the presumption created by the deemed admission of Decedent's California residence. This finding is based on the following undisputed facts: Decedent listed his address in the insurance application as Arizona; Decedent held a current Arizona driver's license; Decedent was living with his girlfriend in Yuma, Arizona; Decedent received his insurance medical exam in Arizona; Decedent, in Jackson National's words, was "making a transition to Arizona"; and Decedent traveled from Arizona to California to obtain insurance. These "pertinent objective facts" show by a preponderance of the evidence that Decedent generally was residing in Arizona and intended to remain here. *Id.* at 1212. Domicile exists in Arizona when a person is physically present in the state and has an intent to abandon his former domicile and remain here for an indefinite period of time. *Lake*, 716 P.2d at 58. The Court finds that Decedent's domicile was Arizona notwithstanding Plaintiff's deemed admission that he was a resident of California on two days, November 20, 2006 and January 16, 2007.[2]

Decedent's domicile in Arizona controls the choice-of-law issue unless California has a more significant relationship to the parties or the transaction under the principles stated in § 6 of the Restatement. Restatement § 192.

---

[2] The Court is permitted to resolve this factual issues by a preponderance of the evidence. "A federal court sitting in diversity must apply the forum state's choice of law rules." *Jorgensen*, 320 F.3d at 913. Under Arizona law, "[c]hoice-of-law issues are questions of law" to be decided by the Court. *See, e.g., Swanson v. Image Bank, Inc.*, 77 P.3d 439, 441 (Ariz. 2003); *Baroldy v. Ortho Pharmaceutical Corp.*, 760 P.2d 574, 578 (Ariz. App. 1988).

### 3. Restatement § 6.[3]

Part 1 of Section 6 of the Restatement directs the Court to consider any forum state statute that specifies the law to be chosen. Restatement § 6(1). Arizona has such a statute. A.R.S. § 20-1101 provides that Arizona statutes governing insurance contracts, including the rescission provision cited by Plaintiff (A.R.S. § 20-1109), do not apply to "[p]olicies or contracts not issued for delivery in this state nor delivered in this state[.]" § 20-1101. The statute does not specify what law applies to policies issued for delivery and delivered in a state other than Arizona.

In this case, the parties dispute where the policy was issued for delivery and delivered. If the policy was issued for delivery or delivered in Arizona, A.R.S. § 20-1101 specifies that Arizona insurance statutes would apply, the principles of § 6 therefore would not override the place of Decedent's domicile (Arizona) and, under § 192, Arizona law would apply, including the rescission statute at A.R.S. § 20-1109. If the policy was issued for delivery and delivered in California, however, § 20-1101 would not direct that California law apply – it is silent on the subject. Because an Arizona statute in that instance would not specify the law to be chosen, the Court would be required to turn to Part 2 of § 6 to see if the considerations of that part suggest California has a more significant relationship than the place of domicile (Arizona). As explained below, Part 2 of § 6 does not lead to the conclusion that California has a more significant relationship to this case than Arizona. Thus, even if the insurance policy was issued for delivery and delivered in California, Arizona law would apply.

Part 2 of § 6 identifies the following factors to be considered in determining which state had the more substantial relationship:

> (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other

---

[3] The parties' briefing focuses primarily on Restatement §§ 187 and 188 in addressing which state has the most substantial relationship, but Restatement § 192 directs the Court to apply the principles of § 6 when determining whether another state has a more substantial relationship to the parties and the transaction than Decedent's domicile. The Court therefore applies § 6, but notes that applying §§ 187 and 188 would result in the same outcome.

> interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied.

Restatement § 6(2). The Court will address these factors individually.

### a. Needs of the interstate system.

This factor considers the choice-of-law rules adopted by the various states, emphasizing that uniformity in choice-of-law principles will serve the purposes of an interstate system of commerce. Restatement § 6, cmt. d. Arizona follows the Restatement and thereby furthers the interests of uniformity in choice-of-law principles. This factor therefore does not suggest that California has a more significant relationship to the parties or transaction.

### b. Policies of the forum and other states.

The parties seem to agree that Arizona law creates a higher threshold for rescission of the life insurance policy than California law. Assuming California would allow rescission more readily, its policy could be viewed as favoring insurers. And yet California does not have any particular interest in favoring Jackson National in this case because Jackson National is not based in California – it is a Michigan company. Arizona's law, by creating a higher threshold for rescission, could be viewed as favoring insureds. And Arizona does have an interest in promoting this policy in this case because at least one of the beneficiaries of the life insurance policy resides in Arizona. Thus, when considering the relative policies of the two states at issue, Arizona has a more direct interest in this case.

### c. Protection of justified expectations.

Jackson National seems to argue that it had a justified expectation that California law would apply. The Court does not agree. Given the Restatement's clear requirement that any life-insurance choice-of-law provision be included in the insured's *application* (§ 192), and the apparent absence of any such choice in this case, the Court cannot conclude that any California-law expectation on the part of Jackson National was justified.

- 7 -

1      Jackson National argues that the policy was issued for delivery in California, a fact
2 Plaintiff disputes, but this assertion is not supported with legal arguments. Doc. 48 at 12-15.
3 Jackson National does cite to Bates pages JNLIC.00166-168 of Exhibit 4 (Doc. 49 at 3 n.10),
4 which correspond to Doc. 49-3 at 28-30, but the cited pages cannot support a justified
5 expectation. In addition to the fact that pages in the *insurance policy* cannot provide a choice
6 of law under § 192, the cited pages of the policy include a section excluding from coverage
7 by the California Life and Health Insurance Guarantee Association those persons who are
8 "eligible for protection under the laws of another state," suggesting that the pages do not
9 unambiguously anticipate that the insured would be protected by California law. Doc. 49-3
10 at 29. The cited pages also state that Jackson National's service center is located in Lansing,
11 Michigan. *Id.* at 30.

12      Jackson National notes that the policy designated the "Issue State" as California, and
13 elsewhere provided that "[t]his Policy will be governed by the law of the state in which it is
14 issued for delivery." *See* Doc. 48, Ex. 4 at 3, 7. But the Court cannot conclude from this
15 language either that the policy unambiguously chose California law or that Jackson National
16 justifiably thought it did. As already noted several times, the *policy* cannot choose the
17 applicable law under § 192. In addition, "issue state" and "state in which it is issued for
18 delivery" are not necessarily synonymous. One could mean the state of policy issuance, the
19 other the state of policy delivery. Neither phrase is defined in the Jackson National policy.

20      Even if Jackson National incorrectly looked to the policy in forming its expectations,
21 the policy refers to several states. The data page lists Michigan as the location of Jackson
22 National's service center (Doc. 49-3 at 6), and another page lists Jackson National's
23 headquarters as "Lansing, Michigan" (*id.* at 2). The policy purports to be signed by both the
24 President and the Secretary of Jackson National, presumably in Michigan. The policy shows
25 the insured's address as Yuma, Arizona. *Id.* at 26; *see also id.* at 19.

26               **d.     Policies underlying life insurance law.**

27      The parties do not address this factor, and the Court cannot conclude that it favors a
28 choice of California law. The public policy of insurance law certainly includes protecting

- 8 -

1 the rights of beneficiaries, as Plaintiff would emphasize, and protecting insurers from
2 misrepresentations in applications, as Jackson National would emphasize. These policies do
3 not tip the balance in either state's favor. As noted above, however, Arizona's apparent
4 policy of creating a higher threshold for rescission would most clearly be given effect by
5 choosing Arizona law.

**f.     Certainty, predictability, and uniformity of result.**

7 The parties do not address these factors. The Court has found no basis for concluding
8 that choosing Arizona law would undermine these considerations.

**g.     Ease in determining and applying the law.**

10 The parties do not address this factor. The Court cannot conclude that California law
11 is more easily determined or applied than Arizona law.

**C.     Conclusion.**

13 Because Decedent was domiciled in Arizona at the time of his application, and
14 California does not have a more substantial relationship than Arizona when § 6 factors are
15 considered, the Court concludes that Arizona law governs the life insurance contract under
16 Restatement § 192. Because Jackson National seeks summary judgment only under
17 California law, its motion for summary judgment will be denied.

18 The Court notes a legal issue still to be resolved in this case. If the evidence presented
19 at trial shows that the policy was issued for delivery or delivered in Arizona, the Arizona
20 rescission statute will apply for reasons described above. If the evidence at trial shows that
21 the policy was issued for delivery and delivered in California, the Arizona rescission statute
22 will not apply given the clear language in A.R.S. § 20-1101, and yet for reasons described
23 above, Decedent still will have been domiciled in Arizona and the factors in § 6 still will not
24 show that California has a more substantial relationship than Arizona. As a result, § 192 still
25 will choose Arizona law. But what Arizona law will apply if the rescission statute does not?
26 The parties should address this issue in their proposed final pretrial order.

**III.    Plaintiff's Motion to Withdraw Admission.**

28 Plaintiff moves to withdraw the deemed admission that Decedent was a resident of

- 9 -

California on November 20, 2006 and January 16, 2007. Doc. 50. The Court may grant relief from such an admission where (1) it would "promote the presentation of the merits of the action" and (2) it would not "prejudice the [nonmoving] party in maintaining the action or defense on the merits ." Fed. R. Civ. P. 36(b). The Court concludes that Jackson National would be prejudiced if Plaintiff were permitted to withdraw its admission. Discovery has long since closed. The case will now move forward to trial. Jackson National would be prejudiced at trial by having lost the opportunity to conduct discovery into Decedent's residence on the days in question in reliance on Plaintiff's admission.

**IT IS ORDERED:**

1. Defendant Jackson National's motion to strike (Doc. 57) is **granted.**
2. Defendant Jackson National's motion for summary disposition (Doc. 62) is **granted.**
3. Plaintiff's motion for summary judgment (Doc. 53) is **denied**.
4. Defendant Jackson National's motion for summary judgment (Doc. 48) is **denied**.
5. Plaintiff's motion to withdraw the deemed admission (Doc. 50) is **denied**.
6. The Court will set a final pretrial conference by separate order.
7. The Court will also, by separate order, require the parties to participate in a settlement conference in June with visiting Ninth Circuit mediators.

DATED this 3rd day of May, 2011.

_David G. Campbell_
David G. Campbell
United States District Judge